NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:

                                        Chapter 13

ALEXANDER MANCONE

                                        Case No. 18-36018 (KYP)

        Debtor.

----------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION TO REOPEN BANKRUPTCY CASE

**APPEARANCES:**

CARLOS J. CUEVAS, ESQ.
*Counsel for the Debtor*
1250 Central Park Avenue
Yonkers, NY 10704

DAVIDSON FINK LLP
*Counsel for Cenlar FSB*
400 Meridian Centre Blvd.
Suite 200
Rochester, New York, 14618
By:    Miranda L. Jakubec, Esq.
          Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Alexander Mancone ("Debtor") moves to reopen his Chapter 13 bankruptcy case ("Motion to Reopen")[1] to seek sanctions against Cenlar FSB ("Cenlar") – the servicer of the Debtor's mortgage – for violating an April 2019 order approving a mortgage

---

[1] *See Motion to Reopen Chapter 13 Case*, dated Jan. 5, 2026 (ECF Doc. # 102); *see also Reply of Alexander [Mancone] in Support of His Motion to Reopen Bankruptcy Case*, dated Jan. 22, 2026 ("Reply") (ECF Doc. # 108). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.

modification ("Loan Modification Order").[2] Cenlar opposes the Motion ("Objection").[3] For the reasons stated, the Motion to Reopen is DENIED.

## JURISDICTION

This Court has jurisdiction over the Motion to Reopen pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.), referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has jurisdiction to interpret and enforce the Loan Modification Order. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

## BACKGROUND

**A.   The Bankruptcy Case and the Loan Modification**

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 18, 2018 ("Petition Date"). (ECF Doc. # 1.) CitiBank, N.A. filed a secured claim in the amount of $361,935.61 secured by the Debtor's property located at 62 Knollcrest Road, Carmel, NY 10512. (*See* Claim No. 7-1.) As of the Petition Date, the Debtor owed mortgage arrears in the aggregate amount of $74,151.23. (*Id.*) CitiBank, N.A. subsequently transferred its secured claim to CitiMortgage, Inc. ("Citi"), and Cenlar acts as Citi's loan servicer. (*See Transfer of Claim Other Than For Security*, docketed on Dec. 27, 2019 (ECF Doc. # 85).)

---

[2]   *See Order Approving Permanent Loan Modification Agreement With CitiMortgage, Inc.*, dated Apr. 10, 2019 (ECF Doc. # 55).

[3]   *See Affirmation in Opposition to Reopening the Case*, dated Jan. 20, 2026 (ECF Doc. # 107).

2

In the early part of the case, the Debtor requested loss mitigation with Citi, and the Court granted the Debtor's application. (*See Loss-Mitigation Order*, dated Aug. 13, 2018 (ECF Doc. # 13).)[4] Loss mitigation resulted in the parties agreeing to a modification of the mortgage, and the Court approved the modification by entering the Loan Modification Order on April 10, 2019. The Loan Modification Order annexed a copy of the modification agreement as well as a March 12, 2019 correspondence from Citi to the Debtor summarizing the modification. (*See* Loan Modification Order, Ex. A.) These documents outlined the terms of the modified loan ("Modified Loan") including the following:

|  | Original Loan | Modified Loan |
|---|---|---|
| **Principal Balance** | $303,663.26 | $383,195.77 |
| **Interest Rate** | 5.5% | 3.5% |
| **Monthly Payment** | $2,546.46 | $1,484.47 |
| **Loan Maturity** | May 9, 2037 | April 1, 2059 |

In essence, the Modified Loan (i) added the prior mortgage arrears into a new principal balance, (ii) lowered the interest rate by 2%, (iii) extended the maturity by providing for a new forty-year repayment period, and (iv) lowered the monthly mortgage payment by over one thousand dollars.

The favorable terms provided in the Modified Loan allowed the Debtor to file an amended *Chapter 13 Plan* on June 25, 2019 ("Plan") (ECF Doc. # 71). The Court confirmed the Plan by order dated August 9, 2019 (ECF Doc. # 82), the Debtor made all required Plan payments by July 2021 (ECF Doc. # 87), the Debtor received a discharge

---

[4] Loss mitigation is a court-supervised mediation program available to individual debtors in this Court whose residential real property is at risk of loss to foreclosure. *See* Bankr. S.D.N.Y. R. 9019-2.

on August 2, 2021 (ECF Doc. # 88), and the case was closed on January 6, 2022 (ECF Doc. # 100).

**B.     Circumstances Leading to the Instant Motion**

On November 12, 2025, Cenlar sent a delinquency notice ("November Notice")[5] to the Debtor stating that it had not received the monthly mortgage payment of $1,484.47. (November Notice at 1.) The November Notice added that failure to make the payment within the grace period reflected on the account statement may result in a late fee. (*Id.*) On December 29, 2025, Cenlar sent another delinquency notice ("December Notice")[6] stating that it had not received the monthly mortgage payment and charging late fees of $234.34. (December Notice at 1.)[7]

The Debtor contends that he timely made every mortgage payment under the Modified Loan and, as proof that he made his November and December payments, the Debtor provided copies of two checks dated November 22, 2025 and December 22, 2025, respectively, each in the amount of $1,500.00. (Reply, Ex. H.)

The Court held a hearing on the Motion to Reopen on January 27, 2026 and took the matter under advisement.

---

[5]    A copy of the November Notice is attached to the Reply as Exhibit B.

[6]    A copy of the December Notice is attached to the Reply as Exhibit G.

[7]    Cenlar sent several other notices to the Debtor. On December 8, 2025, Cenlar sent a notice required under New York law informing the Debtor that he was at risk of foreclosure and providing the contact information of government approved housing counseling agencies in the Debtor's area. (Reply, Ex. C.) On December 9, 2025, Cenlar sent another legally required notice encouraging the Debtor to contact Cenlar's loan workout department to discuss a consensual resolution to the loan delinquency. (*Id.*, Ex. D.) On December 10, 2025, Cenlar sent a letter informing the Debtor of HUD-approved housing counseling agencies who may be able to help the Debtor avoid foreclosure. (*Id.*, Ex. E.) On the same day, Cenlar sent another legally required notice informing the Debtor of potential legal rights he may have under the Servicemembers Civil Relief Act. (*Id.*, Ex. F.)

**DISCUSSION**

**A.     Applicable Legal Standards**

Section 350(b) of the Bankruptcy Code permits the Bankruptcy Court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The District Court outlined the factors to consider when deciding a motion to reopen a case as follows:

> Although the [Bankruptcy Code] does not define "cause," it is appropriate for a bankruptcy court to consider the merits of the underlying claim when deciding whether or not to grant a motion to reopen the proceedings. Thus, where the underlying claim is certain to fail upon a reopening of the proceedings, a bankruptcy court may properly deny the motion. In addition, courts ordinarily consider the benefit to the debtor, prejudice to the would-be defendant in litigation, and the benefit to the creditors. Courts have also considered the amount of time the proceedings have been closed and the availability of relief in other fora.

*In re Kassover*, 448 B.R. 625, 631-32 (S.D.N.Y. 2011) (citations and internal quotation marks omitted). "When weighing these factors, a court ought to emphasize substance over technical considerations." *In re Solutia, Inc.*, 653 B.R. 99, 114 (Bankr. S.D.N.Y. 2023) (citation omitted). "Ultimately, the decision to reopen a case is at the broad discretion of the bankruptcy court." *In re HBLS, L.P.*, 468 B.R. 634, 638 (Bankr. S.D.N.Y. 2012).

**B.     Analysis**

The instant dispute between the parties – whether the Debtor is current on his mortgage payments or at risk of foreclosure – belongs in state court. *See El Bey v. Bellis*, Case No. 3:19-cv-336 (KAD), 2019 WL 2502929, at *4 (D. Conn. June 17, 2019) ("A state foreclosure action is one of the types of actions in which federal courts abstain from interfering, pursuant to [*Younger v. Harris*, 401 U.S. 37 (1971)].") (citation,

internal quotation marks, and alterations omitted); *Billie v. Deutsche Bank Tr. Co.*, Civ. No. 3:18CV01176, 2018 WL 10579837, at *5 (D. Conn. Sept. 14, 2018) ("It is well settled that judgments of foreclosure are fundamentally matters of state law. The Second Circuit has repeatedly concluded that the federal district courts have no jurisdiction to review a state court foreclosure.") (citations, internal quotation marks, and alterations omitted) (report and recommendation), *adopted by* 2018 WL 10579825 (D. Conn. Oct. 24, 2018). The Bankruptcy Court is simply not the appropriate venue to litigate a foreclosure dispute.

The Debtor's attempt to re-frame the issue as a violation of the Loan Modification Order is unpersuasive. That order approved the terms of the Modified Loan. Thus, Citi and/or Cenlar could conceivably violate the Loan Modification Order by refusing to honor the favorable terms given to the Debtor in the Modified Loan.[8] The Loan Modification Order did not result in the Bankruptcy Court becoming the venue to adjudicate payment defaults under the Modified Loan for the life of the loan. It is not uncommon for this Court to approve mortgage modifications under the loss mitigation program or otherwise. Adherence to the Debtor's view would result in an improper encroachment by the Bankruptcy Court into an area reserved for state court adjudication.

---

[8] On October 28, 2021, the Debtor moved for sanctions against Cenlar alleging, *inter alia*, that Cenlar improperly increased the monthly mortgage payment. (*See Declaration of Alexander Mancone*, signed on Oct. 21, 2021 ¶¶ 17-18 ("In the August 20, 2021 correspondence [Cenlar] stated that the new monthly payment was $3,336.62. The Loan Modification unequivocally states that the monthly payment is $1,484.47.") (ECF Doc. # 91).) That matter was consensually resolved by stipulation without a hearing. (ECF Doc. # 97.)

The instant dispute differs from the 2021 dispute because, here, the Debtor has not alleged that Cenlar has altered the terms of the Modified Loan. Instead, the instant dispute centers on whether the Debtor is in default under the Modified Loan.

6

## **CONCLUSION AND ORDER**

For the reasons stated, the Motion to Reopen is DENIED.[9]

Dated:      February 18, 2026
            Poughkeepsie, New York

/s/ <i>Kyu Y. Paek</i>
Honorable Kyu Y. Paek
United States Bankruptcy Judge

---

[9] Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.